605 So.2d 781 (1992)
Claudia ARLEDGE
v.
Dr. Charles McFATTER.
No. 90-CA-0212.
Supreme Court of Mississippi.
August 5, 1992.
Rehearing Denied October 1, 1992.
*782 Landman Teller, Jr., Teller Martin Chaney & Hassell, Vicksburg, for appellant.
R.E. Parker, Jr., Gail S. Akin, Varner Parker Sessums & Akin, Vicksburg, William R. Lancaster, Ramsey & Sheldon, Mobile, for appellee.
En Banc.
PRATHER, Justice, for the court:

I. INTRODUCTION
This medical malpractice case from the Warren County Circuit Court involves issues of instruction procedures and instruction sufficiency. Perusal of the record leads this Court to reverse and remand for a new trial.

A. Facts
In January 1987, Claudia Arledge approached gynecologist and surgeon, Dr. Charles McFatter, and requested information on liposuction. McFatter examined Arledge; he concluded that liposuction and abdominoplasty might help improve her general appearance described as "obese."
In February 1987, McFatter performed liposuction and abdominoplasty on Arledge; he also performed an appendectomy and hysterectomy. McFatter encountered no complications; he considered the operation to be a success. As time progressed, however, Arledge became upset about the resultant scar and some pain she had begun to experience allegedly due to the scar. So in December 1988, she filed a complaint in the Warren County Circuit Court against McFatter. She alleged that McFatter negligently performed the liposuction and abdominoplasty on her.
In November 1989, Judge Frank Vollor held trial. At the conclusion of the trial, Judge Vollor and the attorneys debated over which instructions should be submitted. Each attorney also complained that the other submitted too many instructions for consideration. The judge noted their complaint and proceeded with the debate.
After four hours of debate, the judge instructed the jury. During its deliberations, the jury handed the bailiff a handwritten note to deliver to the judge:
If we vote one issue for Plaintiff and the other for the Defendant, how do we decide? Read last paragraph.
"Read last paragraph" referred to the last paragraph in Instruction D-9B, which the jury appended to the note:
INSTRUCTION D-9B
The Court instructs the jury that the Plaintiff is seeking damages against Dr. McFatter based on two (2) theories of law: 1) negligence or breach of the applicable standard of care of physicians performing liposuction and abdominoplasty; and 2) failure to obtain the Plaintiff's informed consent for the liposuction and abdominoplasty.
These theories of law involve separate claims and must each be separately proved. If the Plaintiff fails to prove either of these claims by a preponderance or greater weight of the credible evidence, then you should consider the other claim before you may return a verdict. If the Plaintiff fails to prove both of these claims by a preponderance or greater weight of the credible evidence, then your verdict shall be for Dr. McFatter.
*783 Upon reading the note, the judge and counsel debated over the method of response. Over McFatter's objection, the judge instructed Arledge's counsel to draft another instruction. Arledge completed the task in about forty minutes; however, before the judge could provide the jury with this new instruction, the bailiff learned that a verdict had been reached. The jury found for McFatter.
Arledge filed a motion for j.n.o.v. or new trial; she complained that Instruction D-9B was "misleading, confusing and peremptory in nature" and that the jury was not re-instructed in a timely manner. Arledge contended that the untimeliness led the jury to "assume" that "no additional instruction was forthcoming and felt compelled to decide for [McFatter]." The judge denied the motion.

B. Issues
Arledge appealed and presented two issues:
1. Whether the trial judge erroneously failed to instruct the jury after the jury requested further instruction during deliberation?
2. Whether the judge erroneously allowed McFatter to submit more instructions than are allowed by Uniform Circuit Court Rule 3.09?
McFatter cross-appealed and presented one issue:
3. Whether the judge erroneously assessed costs against him for the portion of the record designated by him.?

II. ANALYSIS

A. Issue # 1

1.
Through this issue, Arledge contends that Instruction D-9B confused the jury and that the judge should have re-instructed the jury after being asked for clarification of a point of law. The record does not reflect a "refusal" by the trial judge to reinstruct the jury; rather, the record reflects that the judge and attorneys were constructing a new instruction when the jury reached a verdict.

2.
This Court has reviewed all the instructions and concludes that they adequately state relevant law. See Strickland v. Rosini, 589 So.2d 1268, 1273 (Miss. 1991). Adequacy notwithstanding, this Court is compelled to reverse.
As a matter of institutional imperative, "our law presumes that jurors follow the trial judge's instructions, as upon their oaths they are obliged to do." Parker v. Jones County Community Hosp., 549 So.2d 443, 446 (Miss. 1989); see also Collins v. State, 594 So.2d 29, 35 (Miss. 1992). The facts, however, "take this case out of the general principle." Parker, 549 So.2d at 446 (emphasis added). In other words, the presumption that jurors follow the law as instructed has been sufficiently rebutted.
The jury requested clarification of Instruction D-9B. As Judge Vollor seems to have concluded, the jury's request was indicative of confusion. The judge decided that clarification was appropriate, but he failed to inform the jury that a new instruction was forthcoming. The jury waited about forty-five minutes and, prior to being re-instructed, returned a verdict. One cannot logically "presume" that the jury understood and followed the law as instructed. Indeed, a questionaire which Judge Vollor routinely submits to jurors upon completion of a trial revealed that at least one juror in this case was confused by the instructions.

3.
In sum, this Court reverses and remands this case for a new trial on the merits. To avoid a reversible situation like this in the future, the judge should immediately inform the jury that a response is forthcoming.

B. Issues # 2 and 3
This Court has reviewed the record, briefs, and relevant law and affirms on these issues. However, before concluding, one point must be noted. Neither party in this case complied with Uniform Circuit Court Rule 3.09 regarding the limitation on the number of instructions which may be *784 submitted: "[A]ttorneys may submit no more than six instructions on the substantive law of the case." McFatter submitted approximately twenty-five instructions prior to trial, and Arledge submitted approximately seven instructions.
The circuit court rules were adopted to facilitate orderly and efficient procedure in judicial proceedings. Attorneys are expected to follow the rules, including the limitation on the number of instructions which may be submitted. In complicated cases, the trial judge may waive the limitation and permit additional instructions upon request and when warranted.
The excessive number of instructions submitted by both McFatter and Arledge constitutes an abuse of procedure and must not be repeated unless the judge waives the limitation upon reasonable request.

III. CONCLUSION
On the basis of the foregoing, this Court reverses on the first issue and remands for a new trial on the merits. This Court affirms on the remaining issues on direct and cross-appeal.
REVERSED AND REMANDED FOR A NEW TRIAL.
DAN M. LEE, P.J., and SULLIVAN, BANKS and MCRAE, JJ., concur.
BANKS, J., concurs with separate written opinion, joined by DAN M. LEE, P.J., and PRATHER and SULLIVAN, JJ.
ROY NOBLE LEE, C.J., dissents with separate written opinion, joined by HAWKINS, P.J., and ROBERTSON and PITTMAN, JJ.
ROBERTSON, J., dissents with separate written opinion, joined by ROY NOBLE LEE, C.J., and HAWKINS, P.J.
BANKS, Justice, concurring:
I concur in the result reached by the majority. With deference, it is my view that the dissenters miss the point that regardless of how clear and correct the instructions may appear to us, and to appellant's counsel when submitted, there is irrefutable evidence that the jury found them conflicting at a point and no evidence that it resolved the confusion correctly. The trial court could and should have taken steps to clarify the matter. It could have inquired as to whether and how the jury resolved the question it posed in a special polling process. It could have refused to accept the verdict until after it gave a clarifying instruction and allowed further deliberation to confirm the jury's resolve. Having failed to address the issue at all, we are left to speculate.
Reversal is not mandated because D-9A, when read together with other instructions, is confusing when viewed objectively. Reversal is mandated because there is concrete evidence that the instruction was in fact confusing to the jury. Appellant's failure to object to the instruction when given cannot be deemed a waiver of her right to have the jury's manifest confusion resolved to the extent that the instruction has some ambiguity and to the extent that it can be resolved by a clarifying instruction.
Here, D-9A could have been clarified by substituting the words "proves neither" for the words "fails to prove both." Admittedly, this simple solution might not have been readily apparent in the heat of the moment, and the court therefore cannot be faulted for taking some time to get an appropriate instruction. The solution actually suggested by plaintiffs was an additional instruction, or paragraph for D-9A, reading as follows:
The court tells you that if you find the plaintiff has proven either one of the theories or claims by a preponderance of the evidence, you must return a verdict for the plaintiff, Claudia Arledge.
This language does clarify D-9A and should have been given before the verdict was accepted.
The court's error was in not getting assurance on the record that the confusion was correctly resolved.
We should be beyond the point where we are afraid of post-voir dire dialogue with jurors. Surely the court could have inquired of the foreman, on the record, if and *785 how their query was resolved by them. If not, certainly, the prepared clarifying instruction could have been given and a determination made by polling or further deliberation whether the clarifying instruction affected the verdict.
DAN M. LEE, P.J., and PRATHER and SULLIVAN, JJ., join this opinion.
ROY NOBLE LEE, Chief Justice, dissenting:
For the reasons stated below, I would affirm this case in its entirety.

I.
In February 1987, Dr. Charles McFatter successfully performed liposuction and abdominoplasty on Claudia Arledge. Arledge later complained about the resultant scar and some pain she had begun to experience allegedly due to the scar. She filed a complaint in the Warren County Circuit Court against McFatter and alleged that he negligently performed the operation. The record does not reveal the specifics of Arledge's allegation; she failed to explain through the record or her brief how McFatter allegedly breached the applicable standard of care and how such breach proximately caused her alleged injuries.
At trial, McFatter's experts testified that McFatter complied with the applicable standard of care and committed no negligence. They explained that any pain which Arledge may have been experiencing from the scar was due to her obesity:
[T]he difference in the skin and the scar is very important and in my view is the ... key to what really happened in this particular case. This woman [Arledge] is complaining ... of pain in this [surgical] wound, and it's from the scar, [which] doesn't contain elastic fibers and you know any of us sitting anywhere in the world knows that if you eat more and you gain more, your belly hangs out more. If you eat less it comes back in because there's elastic fibers inside the skin so it can stretch and get bigger with pregnancy, for instance, and smaller with weight ... loss. [A] scar doesn't [have such elasticity]. That scar doesn't have the same ability. So if this lady [Arledge] would take off fifty to sixty pounds, there would be no pain in her wound, or rather than, if she feels she can't, if she has multiple incisions into that wound to release all the pressure so that the scar itself could separate, and allow more room for her obesity to come through, she'd be relieved of her pain in five minutes.
Because Arledge failed to designate a complete record, this Court will never know what evidence she presented at trial to support her allegations against McFatter.[1]
At the conclusion of the trial, Judge Vollor instructed the jury. During its deliberations, the jury provided the bailiff with a handwritten note for delivery to the judge. This note inquired:
If we vote one issue for Plaintiff and the other for the Defendant, how do we decide? Read last paragraph.
"Read last paragraph" referred to the last paragraph in Instruction D-9B, which the jury appended to the note:
INSTRUCTION D-9B
The Court instructs the jury that the Plaintiff is seeking damages against Dr. McFatter based on two (2) theories of law: 1) negligence or breach of the applicable standard of care of physicians performing liposuction and abdominoplasty; and 2) failure to obtain the Plaintiff's informed consent for the liposuction and abdominoplasty.[2]

These theories of law involve separate claims and must each be separately proved. If the Plaintiff fails to prove either of these claims by a preponderance or greater weight of the credible evidence, then you should consider the other claim before you may return a *786 verdict. If the Plaintiff fails to prove both of these claims by a preponderance or greater weight of the credible evidence, then your verdict shall be for Dr. McFatter.

Before the judge could provide the jury with a new instruction,[3] the jury returned a verdict in favor of McFatter. Arledge moved for a j.n.o.v. or new trial on the basis that Instruction D-9B was "misleading, confusing and peremptory in nature" and that the jury was not re-instructed in a timely manner. Arledge contended that the untimeliness led the jury to "assume" that "no additional instruction was forthcoming and felt compelled to decide for [McFatter]." The judge issued a well-reasoned opinion through which he denied the motion:
OPINION
During the deliberations the jury sent a note to the Court asking "If we vote one issue for the Plaintiff and the other for the Defendant how do we decide? Read last paragraph " and included instruction D-9B, which stated in substance, that if the Plaintiff failed to prove both claims, 1) Negligence or breach of standard of care and 2) failure to obtain informed consent  then the verdict must be for Dr. McFatter, the Defendant. The Court inquired if the parties would agree to further instruction, and Defendant objected. The matter was researched and based on the case of Clarke v. Pierce, 34 So. 4, 82 Miss. 462 (1903) the Court determined to give further instruction over objection of Defendant. Another instruction was drafted, objection of Defendant was noted, but before the instruction could be given the Bailiff, the jury announced that it had reached a verdict. Approximately forty-five minutes had lapsed since the note was sent out and the verdict was reached. That verdict was for the Defendant. A poll of the Jury indicated it was a 10-2 decision. The Court as is its standard practice distributed voluntary anonymous questionnaires to the jury panel on their experience as jurors. Three were returned and one of the three complained that the instructions were confusing.
The Court notes that Instruction c-1 informed the Jury, "You are not to single out one instruction alone as stating the law, but you must consider these instructions as a whole"; and further, "You are not to single out any certain witness or individual point or instruction and ignore the others."
Instruction P-2A set forth the standard of reasonable diligence, skill, competence and prudence of minimally competent physicians, and instructed that if the Jury found that the Plaintiff was obese with a large panniculus and that the Defendant determined to perform the liposuction and abdominoplasty and in so doing [failed] to use reasonable and ordinary care as other minimally competent physicians would ordinarily exercise, "then you must return a verdict for Plaintiff, Claudia Arledge." (Emphasis added).
Instruction P-8 set forth the duty to inform Plaintiff of material risk of surgery and defined material risk. The instruction further stated that if the Jury found the Defendant failed to inform of material risk "then it shall be your sworn duty to return a verdict for Claudia Arledge." (Emphasis added).
Instruction D-9B as set forth above, points out that the Plaintiff was proceeding on two separate theories which must be proved separately, that the Jury must consider both theories, further, if the Plaintiff failed to prove one theory, then the Jury was to consider the other; and, if Plaintiff failed to prove both theories, to return a verdict for the Defendant.
The Court notes that the Defendant initially submitted approximately twenty-five (25) instructions. During the course of the trial they withdrew most of those *787 requested instructions and re-submitted and further re-submitted a third draft of some of the requested instructions.
The Plaintiff initially submitted approximately seven (7) instructions and withdrew three (3) or four (4) and re-submitted those instructions with an additional instruction.
The Court spent four hours going over the instructions with the attorneys and is of the opinion that the Jury although not perfectly instructed was adequately instructed.
The question posed by the Jury could have been readily resolved by referring to Instructions P-2A and P-8 if it was not clear in D-9B. The Jury sent Instruction D-9B with the note and kept the other instructions with them. The Court concludes that the Jury must have reviewed the remainder of the instructions and resolved any difficulty any juror may have had for they returned a verdict before the Court responded to their question. To have returned a verdict for the Defendant, the Jury would have had to conclude that Plaintiff did not prove either negligence and breach of care as set forth in P-2A, or lack of informed consent as set forth in P-8, because both instructions require a Plaintiff's verdict if either was proved. The Court cannot conclude or find that the Jury was confused.
The Court further finds that this case involved disputed facts supported by credible evidence upon which reasonable persons could differ and the verdict was not contrary to the clear and overwhelming weight of the evidence.
The Court concludes that Plaintiff's motion for J.N.O.V. or, in the alternative, for a new trial should be overruled.
Arledge appealed and presented two issues:
1. Whether the trial court erred in allowing Dr. McFatter to submit nineteen more instructions than are allowed by Uniform Circuit Court Rule 3.09?
2. Whether the trial court failed to instruct the jury after the jury requested further instruction during deliberation?
A majority of this Court has decided to reverse. This decision is erroneous as a matter of law.

II.

1.
The gist of the majority's decision to reverse is speculation that the jury was confused by and "failed to follow" Instruction D-9B, to which Arledge objects on appeal as "misleading, confusing, and peremptory in nature." Regrettably for Arledge, she failed at trial to object to the instruction in its present form:[4]

INSTRUCTION D-9B: BY THE COURT: You previously had objected to that.
BY MR. TELLER [Arledge's counsel]: We have no objection.

BY THE COURT: It will be given.
Rec. Vol. II, at 5.
Thus, Arledge raised no objection and waived her right to challenge the instruction on appeal. See Capital Transport Co. v. McDuff, 319 So.2d 658, 661-62 (Miss. 1975) ("Interesting here is the fact that at the trial level Capital made no objection to appellee's instruction which expressly authorized the jury to find against Capital only."); Young v. Robinson, 538 So.2d 781, 783 (Miss. 1989) (declining to address appellant's challenge to two instructions because he failed to object to them at trial level); Shell Oil Co. v. Murrah, 493 So.2d 1274, 1276 (Miss. 1986) (same); Todd v. Turnbull, 469 So.2d 71, 76 (Miss. 1985) (same); see also Unif.Cir.Ct.R. 3.09.
The majority conveniently omits from its opinion the fact that Arledge did not raise an objection  albeit the majority is well aware that a procedural bar is applicable under entrenched case law. The majority's refusal to apply a procedural bar in this case is inconsistent with its decision in another case: Meena v. Wilburn, 603 So.2d *788 866, 873 (Miss. 1992). In Meena, Justice Prather wrote:
With regard to Meena's contention that submission of Instruction 15 confused the jury, this Court declines to address this "sub-issue" because Meena failed to raise it at the trial level.
Thus, two majority opinions recently have been written by this Court. Each involves an allegation that a particular instruction confused the jury. And each involves a failure by the appellant to object to the instruction at the trial level. In one opinion (Meena v. Wilburn), this Court concluded that the appellant's failure constituted a waiver of his right to raise the issue on appeal. In the other opinion (Arledge v. McFatter), this Court without explanation wholly ignored application of the procedural bar.
This Court should avert the blatant inconsistency and decide to apply a procedural bar in both cases or in neither.

2.
In addition to procedural grounds, this Court should affirm the case sub judice on substantive grounds. In other words, the challenged instruction is correct as a matter of law. The majority certainly agrees that the instruction is correct: "This Court has reviewed all the instructions and concludes that they adequately state relevant law." See op. at 783. The majority then speculates that the jury rendered the verdict in a confused and impatient state of mind. Such speculation flies in the face of the principle upon which the majority relies: As a matter of institutional imperative, "our law presumes that jurors follow the trial judge's instructions, as upon their oaths they are obliged to do." Parker v. Jones County Community Hosp., 549 So.2d 443, 446 (Miss. 1989). Indeed, Justice Prather relied on this principle only three months ago to affirm in a case where an error in instruction was alleged:
Regarding the standard for reviewing jury instructions, an instructional error will not warrant reversal if the jury was fully and fairly instructed by the other instructions. This Court assumes that juries follow the instructions given.

Collins v. State, 594 So.2d 29, 35 (Miss. 1992) (emphasis added); see also Middle-brook v. State, 555 So.2d 1009, 1013 (Miss. 1990); Jerry Lee's Grocery, Inc. v. Thompson, 528 So.2d 293, 295 (Miss. 1988); Shoemaker v. State, 502 So.2d 1193, 1195 (Miss. 1987); Mississippi Farm Bureau Mut. Ins. Co. v. Todd, 492 So.2d 919, 934 (Miss. 1986); Gray v. State, 472 So.2d 409, 414 (Miss. 1985); Evans v. State, 422 So.2d 737, 744 (Miss. 1982); Clanton v. State, 279 So.2d 599, 602 (Miss. 1973); Atwood v. Lever, 274 So.2d 146, 148 (Miss. 1973).
Neither the majority nor Arledge has provided a sufficient reason to "take this case out of the general principle." Parker, 549 So.2d at 446. Indeed, the judge polled the jury and found that ten jurors voted in favor of McFatter and two voted against. Moreover, a questionaire routinely submitted to jurors upon completion of a trial revealed only one juror who admitted to being somewhat confused by the instructions as a whole. Certainly, such revelation does not warrant reversal of this case. The trial judge did not think so, and the record is devoid of anything to show that his thinking should be deemed an abuse of discretion.
In sum, even if Arledge had preserved this issue by contemporaneous objection, this Court should affirm on the basis that the jury was correctly instructed and it presumably followed the law as instructed.

III.
In conclusion, the decision to reverse is erroneously based on mere speculation that the jury was confused by an allegedly misleading instruction. The majority opinion is replete with errors, inconsistencies, and disregard for entrenched law. This Court should affirm the trial judge's well-reasoned and correct decision to deny Arledge's motion for a j.n.o.v. or new trial.
HAWKINS, P.J., and ROBERTSON and PITTMAN, JJ., join this dissent.
ROBERTSON, Justice, dissenting:

I.
I respectfully dissent, because I rather suspect the jury did the same thing with *789 Instruction D-9B I did. The hurried reader will invariably remember most the first and last sentence of a text. When I hurriedly read Instruction D-9B, it struck me something was wrong. In a case where Plaintiff advances two separate and independent theories of recovery, the Defendant does not win if the Plaintiff fails on either but only one. But if you step back from the instruction and read it a couple of times, not only does any confusion disappear, but we quickly see that the instruction is a correct statement of the law.
In its first sentence it tells the jury the Plaintiff presents two claims: (1) negligence and (2) failure to obtain Plaintiff's informed consent. The Court tells the jury that Plaintiff presents "two theories of law" and these "involve separate claims" and that each must be "separately proved." In further clarification the Court then says, if you find the Plaintiff has failed on one of her claims, you should then "consider the other claim before you may return a verdict." At this point, the said-to-be offending sentence,
If the plaintiff fails to prove both of these claims by a preponderance or greater weight of the credible evidence, then your verdict shall be for Dr. McFatter,
makes perfectly good sense. The sentence is legally correct in the sense that, if Plaintiff fails to prove both of her claims, the verdict should be for the Defendant. It is linguistically correct because the Court has just explained that the two claims are separate and distinct and what the jury should do if it finds against Plaintiff on one claim  move on to the next! Having told the jury what it should do if it fails to find for Plaintiff on one claim, it makes perfectly good sense for the Court to then tell the jury what to do if it finds Plaintiff has failed in her proof on both claims.

II.
There is a procedural point. Plaintiff Arledge has failed in every way I can imagine to preserve this claim for review. At trial, the record reflects that Instruction D-9B was the subject of considerable discussion. Plaintiff objected to the instruction in its original form. Defendant revised Instruction D-9B and resubmitted it, at which point Plaintiff's counsel reviewed it and stated that he had no objection. The Court then submitted Instruction D-9B to the jury. Ordinarily, we do not consider on appeal the correctness of instructions unless the appellant has noted his objection below and "specifically point[ed] out his ground for objection." Rule 3.09, Uniform Circuit Court Rules; see also, e.g., Young v. Robinson, 538 So.2d 781, 783 (Miss. 1989); Thames v. Eicher, 373 So.2d 1033, 1036 (Miss. 1979).
Not only that, Arledge has not designated the issue for consideration on appeal. Ordinarily, our rule is that "no issue not distinctly identified shall be argued by counsel," Rule 28(a)(3), Miss.Sup.Ct.Rules, although of course, the Court may "notice a plain error." I do not understand Arledge to be suggesting that this is a case in point for plain error, nor does the majority appear to proceed on this premise. Yet, the majority reaches out and seizes upon a perfectly correct instruction and holds it error and the principal grounds for reversal.

III.
There is a broader context. In case after case, we have held we will not reverse for a less than perfect jury instruction where the courts considered as a whole clears up any confusion and provides adequate guidance for the jury. See, e.g., Payne v. Rain Forest Nurseries, Inc., 540 So.2d 35, 40 (Miss. 1989); Byrd v. F-S Prestress, Inc., 464 So.2d 63 (Miss. 1985). This view is but a function of our rule that juries should not single out any one instruction and certainly should not single out a lone sentence in one instruction and consider them out of context. In fact, we find that in Instruction C-1 the Court told the jury, "You are not to single out any ... individual point or instruction and ignore the others."
In point of fact, Instruction P-2A, granted at Arledge's request, correctly advised the jury of the elements of Arledge's negligence *790 claim.[1] Arledge requested another instruction, number P-8, which the Court gave regarding her informed consent claim.[2] When I read together Instructions P-2A, P-8 and D9-B, I am left with the thought, if we are going to hold these instructions inadequate to submit this case to the jury, we have arrogated to ourselves a weapon with which to reverse any verdict that happens not to suit our fancy.

IV.
None of this is to say that the Circuit Court was without the prerogative to grant a further or supplemental instruction to the jury in the face of the note the Court received regarding Instruction D-9B. I understand the majority to be saying this is a matter within the sound discretion of the Circuit Court, and I certainly agree. I accept the further suggestion that, in cases such as this, the Court advised the jury with reasonable promptness whether the Court will submit a supplemental instruction. None of this detracts from the legal adequacy of the instructions the jury had before it when it returned its verdict for the Defendant. It strikes me the defense violated the spirit, if not the letter, of Rule 3.09 regarding the procedural handling of jury instructions pre-trial and at trial, but I think the Circuit Court's handling of this point was well within its discretion.
ROY NOBLE LEE, C.J., and HAWKINS, P.J., concur in this opinion.
NOTES
[1] Specifically, Arledge failed to include a transcript of her own testimony as well as that of her expert or experts  assuming she presented expert testimony.
[2] Curiously, Arledge did not allege a lack of informed consent in her complaint. See Rec. Vol. I, at 18.
[3] The new instruction stated "that if you find the plaintiff has proven [sic] either one of the theories or claims by a preponderance of the evidence, you must return a verdict for the plaintiff, Claudia Arledge." Rec.Vol. 2, at 13.
[4] Arledge had objected to an earlier form of the instruction.
[1] INSTRUCTION NO. P-2A
The Court tells you that Defendant, Charles W. McFatter, did hold himself out to the public and to Plaintiff, Claudia Arledge, as a specialist in liposuction and abdominoplasty and as one being capable of recommending and performing such surgical operations. Therefore, the Court tells you that Charles McFatter had the duty to use his knowledge to treat Claudia Arledge with such reasonable diligence, skill, competence and prudence as other minimally competent physicians in good standing would ordinarily exercise in like cases. Consequently, if you believe from a preponderance of the evidence that:
1. Claudia Arledge was obese with a large panniculus at the time she presented herself to Dr. McFatter for the performance of liposuction; and
2. Charles W. McFatter determined to perform the operation of liposuction and surgery of abdominoplasty on Claudia Arledge in conjunction with a hysterectomy; and
3. In agreeing and determining to perform such procedures, the Defendant, Charles McFatter, failed to use reasonable and ordinary care as other minimally competent physicians in good standing would ordinarily exercise in like cases; and
4. Charles McFatter's agreement to perform, and the performance of such procedures, was the sole proximate cause or a proximate contributing cause of Plaintiff's injuries, if any, Then you must return a verdict for Plaintiff, Claudia Arledge.
[2] NO. P-8
The Court instructs the jury that Mrs. Arledge had four surgical procedures performed on her and the names of them are: liposuction, abdominoplasty, hysterectomy and appendectomy.
Dr. McFatter had the duty to inform Mrs. Arledge of the reasonable material risk of surgery.
The Court instructs the jury that a risk is material if it would be important to a reasonable person and the patients' position in making the decision whether or not to undergo the procedure or treatment. These material known risks include nature and purpose of the proposed treatment, risks and consequences of the proposed treatment and the probability that the proposed treatment will be successful.
The Court further instructs the jury that if you believe from a preponderance of the evidence that Dr. McFatter failed to inform Mrs. Arledge of the material risks known to reasonably prudent physicians performing these procedures and that a reasonably prudent patient would not have undergone the surgical procedures after having been informed of said risks, then it shall be your sworn duty to return a verdict for Claudia Arledge.