ROBERTS, J.,
for the Court:
¶ 1. On November 8, 2006, Jason Chad Cooley (Cooley) filed a complaint for alienation of affection against Chuck Wood. The two-day trial, which began on September 8, 2009, in Lee County Circuit Court, resulted in a $100,000 verdict in favor of Cooley. Subsequently, Wood filed a motion for judgment notwithstanding the verdict (JNOV) and discovery sanctions or, in the alternative, a motion for a new trial or a remittitur. The circuit court denied Wood’s motions on February 8, 2010. It is from this denial that Wood now appeals.
FACTS AND PROCEDURAL HISTORY
¶ 2. Cooley and Jennifer Cooley (Jennifer) were married on February 9, 2002. Each had children from previous relationships, but they had one daughter together. During the marriage, Jennifer was employed by Wilburn Oil Company handling accounts receivable. Her supervisor at Wilburn Oil Company was Wood. While still employed at Wilburn Oil Company, Wood and Jennifer began exchanging flirtatious e-mails and instant messages. Who initiated the first message is disputed. Although both were married to other people at the time, their flirtation eventually progressed into a sexual relationship beginning in January 2006.
¶ 3. In February 2006, after four years of marriage, Cooley and Jennifer separated. Citing habitual cruel and inhuman treatment or irreconcilable differences, Jennifer filed for divorce on March 17, 2006. Ten days later, Cooley, still unaware of the adulterous affair between Jennifer and Wood, filed a counterclaim for divorce on the ground of habitual cruel and inhuman treatment or irreconcilable differences. Jennifer and Wood continued their affair until May 2006 when Wood’s wife confronted him about the affair. Cooley also became aware of the affair during May 2006.
¶ 4. Cooley and Jennifer’s divorce was final on October 12, 2006. Cooley filed his complaint for alienation of affection against Wood on November 8, 2006, seeking $250,000 in compensatory damages and $500,000 in punitive damages. The trial began on September 8, 2009, and ended on September 10, 2009, with the jury returning a verdict in favor of Cooley and awarding him damages in the amount of attorneys’ fees and court costs. Upon hearing that verdict, the circuit judge directed the jury to return to deliberations *924 to determine an amount because the verdict “is more likely than not a legally recognizable verdict which the Court can accept.” The jury then returned a second verdict in favor of Cooley and awarded him $100,000 in damages.
¶ 5. Following the trial, Wood timely filed a JNOV motion or, in the alternative, a motion for a new trial or remittitur. The circuit judge entered an order denying Wood’s motions. It is from this denial that Wood now appeals.
¶ 6. On appeal, Wood raises twelve issues, which we recite verbatim:
I. Whether the jury’s first verdict was a legally cognizable verdict and should have been adopted by the trial court?
II. Whether the second verdict is clearly defective wherein it included damages to compensate the Plain-tiffiAppellee for attorney[s’] fees and court costs?
III. Whether the jury acted on emotion, whim[,] and caprice in awarding a second $100,000 verdict after only awarding the Plaintiff/Appel-lee his attorney!’] fees and court costs in the first verdict?
IV. Whether the Plaintiff/Appellee’s sworn counter-claim for divorce on the grounds of habitual cruel and inhuman treatment and irreconcilable differences in his divorce should bar a later claim for alienation of affection?
V. Whether the Plaintiff/Appellee should have been able to benefit from his failure to disclose the identity of Michael Langley, paramour!,] discovered at trial and not joined in suit?
VI. Whether the Plaintiff/Appellee should have been sanctioned for his discovery violation?
VII. Whether Michael Langley was an indispensable party and the Defendant/Appellant should have been entitled to a new trial?
VIII. Whether the trial court erred in its ruling on the Plaintiff/Appel-lee’s motion in limine?
IX. Whether the trial court should have granted a mistrial based on the statements and inferences made by Plaintiff/Appellee’s counsel during closing argument?
XI. Whether the court erred in submitting (jury instruction] C-7 and C-9?
XII. Whether the trial court should have ordered a new trial due to cumulative error?
¶ 7. Finding no reversible error, we affirm the circuit court’s judgment.
ANALYSIS
¶ 8. As several of Wood’s issues are related, we find it appropriate to combine them.[1]
I. Jury Verdict
¶ 9. In his first issue, Wood argues that the jury’s first verdict was a legally cognizable verdict that awarded Cooley no compensatory damages; thus, the circuit judge erred by sending the jury back to continue deliberations. As a result, Wood also argues that the second verdict is defective because the jury improperly considered attorneys’ fees and court costs when returning the $100,000 verdict. Further, Wood’s final argument regarding the verdict is that the $100,000 award was a prod- *925 uet of the jury acting on emotion, whim, or caprice.
¶ 10. Uniform Rule of Circuit and County Court 3.10 reads, in pertinent part, as follows: “If a verdict is so defective that the court cannot determine from it the intent of the jury, the court shall, with proper instructions, direct the jurors to reconsider the verdict. No verdict shall be accepted until it clearly reflects the intent of the jury.” Further addressing verdicts not in proper form, Mississippi Code Annotated section 11-7-157 (Rev. 2004) provides that even though a jury verdict is not in the proper form, it will not be reversed if “there has been a substantial compliance with the requirements of the law in rendering a verdict....” The test to determine if a verdict is in substantial compliance is “whether or not it is an intelligent answer to the issues submitted to the jury and expressed so that the intent of the jury can be understood by the court.” Oliver v. Goodyear Tire & Rubber Co., 10 So.3d 976, 978 (¶7) (Miss.Ct.App. 2009) (quoting Miss. Valley Gas Co. v. Estate of Walker, 725 So.2d 139, 151 (¶ 45) (Miss.1998) (overruled on other grounds)).
¶ 11. In the current case, jury instruction number C-15 provided the form of the verdict for the jury to follow. It stated that if the jury found for the plaintiff, it should write the following on a separate piece of paper: “We, the jury, find for the plaintiff and assess damages at $_” The first verdict the jury returned stated: “We, the jury, find for the plaintiff and assess damages in the amount of attorney[s’] fees and court cost.” Both Wood and Cooley, in their respective briefs, attempt to impute their interpretation of what the jury intended to award in the first verdict; however, the test is clear. To be in substantial compliance, the verdict must be “expressed so that the intent of the jury can be understood by the court.” Id. (emphasis added). The Mississippi Supreme Court has held that “the meaning of the verdict must be obtained from the language used; ... otherwise it is the duty of the court to require the jury to retire and return a verdict responsive to the issue in the case[.]” Morris v. Robinson Bros. Motor Co., 144 Miss. 861, 866, 110 So. 683, 684 (1927). The meaning and intent of the first jury verdict were open to more than one interpretation; the intent was not able to be obtained solely through the language of the verdict; thus, the intent of the jury was not understood by the court based on the language of the first verdict submitted. Further, it is settled Mississippi law that “attorney’s fees are not an issue to be decided by the jury[,]” and, instead, are committed to the discretion of the trial court. Mitchell v. Broadway Transfer & Storage Co., 749 So.2d 289, 290 (¶ 9) (Miss.Ct.App.1999). It is clear from the verdict that the jury found in favor of Cooley; however, it failed to assess a specific monetary amount and chose to award attorneys’ fees and court costs. Had the jury returned even a nominal amount of compensatory damages, the verdict would be in substantial compliance; instead, they failed to quantify any amount of damages. The Uniform Rule of Circuit and County Court 3.10 allows the trial judge to direct the jury to continue its deliberations if the verdict it returns is so defective that the court cannot determine the jury’s intent. This is precisely what the circuit judge did in the current case. Upon reviewing the jury’s verdict and determining the verdict was not in proper form, the circuit judge referenced jury instruction number C-18 that advised the jury to “refer to the instructions given by the Court and continue [its] deliberations.” After further deliberations, the jury returned a verdict stating: “We, the jury, find for the plaintiff and assess damages at $100,000.” This verdict was properly *926 adopted by the circuit court because it was in proper form and clearly expressed the jury’s intent. This issue is without merit.
¶ 12. Wood next argues that the circuit court erred in failing to instruct the jury that it was not to consider attorneys’ fees or court costs when it deliberated the second time. We find no error. “[0]ur law presumes that jurors follow the trial judge’s instructions.” Steele v. Inn of Vicksburg, Inc., 697 So.2d 373, 378 (Miss. 1997). When reviewing jury instructions on appeal, the jury instructions “are to be read together as a whole, with no one instruction to be read alone or taken out of context.” Burr v. Miss. Baptist Med. Ctr., 909 So.2d 721, 726 (¶ 12) (Miss.2005) (quoting Nunnally v. R.J. Reynolds Tobacco Co., 869 So.2d 373, 378 (¶7) (Miss.2004)). We find that the jury, after reading all the jury instructions as a whole, properly awarded damages according to the instructions. There is nothing in the record to indicate that the jury considered anything except what was presented to it in the instructions. Wood also fails to cite any relevant authority to support his contention that the circuit judge erred in not providing any instruction outside the instructions previously given, or the jury did not properly follow the instructions given to it. Thus, this issue is without merit.
¶ 13. Wood’s final contention about the jury verdict is that the jury’s award of $100,000 was a result of the jury acting on emotion, whim, or caprice. Wood argues that the $100,000 award, after a previous award of only attorneys’ fees and court costs, “shocks the conscience” of the Court and entitles him to a new trial. We disagree. When a jury assesses damages, its award is “not merely advisory and will not ... be set aside unless so unreasonable in amount as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous.” Green v. Grant, 641 So.2d 1203, 1208 (Miss.1994) (quoting Rodgers v. Pascagoula Pub. Sch. Dist., 611 So.2d 942, 945 (Miss.1992)). The extent of damages that Cooley suffered is disputed; therefore, “the jury establishes the value of the loss suffered.... ” Fitch v. Valentine, 959 So.2d 1012, 1030 (¶ 49) (Miss.2007). After finding Wood responsible for alienating the affection of Jennifer, the jury valued the loss of affections and loss of the marriage at $100,000. We find no evidence in the record to support Wood’s contention that the jury was acting on emotion, whim, or caprice.
II. Judicial Estoppel
¶ 14. Wood next argues that judicial estoppel prohibits Cooley from alleging that Wood caused the break up of his marriage. Wood primarily relies on the Mississippi Supreme Court case Dockins v. Allred, 849 So.2d 151, 155 (¶ 7) (Miss.2003), to support his contention that Cooley is judicially estopped from pursuing the alienation-of-affection claim against him. In that case, the supreme court stated that “a party cannot assume a position at one stage of a proceeding and then take a contrary stand later in the same litigation.” Id. It is undisputed that when Cooley filed his counterclaim for a divorce on the grounds of habitual cruel and inhuman treatment and irreconcilable differences, he was not aware of Wood and Jennifer’s affair. After learning of the affair, Cooley did not seek to amend his divorce complaint to allege adultery. In the divorce proceeding, Cooley stated that the habitually cruel and inhuman actions of Jennifer were the proximate cause of the separation. Wood argues that Cooley is prohibited from now asserting that Wood was the cause of the separation since he had previously stated in the divorce proceeding that *927 the cause of the separation was habitual cruel and inhuman treatment.
¶ 15. The doctrine of judicial es-toppel “is based on expedition of litigation between the same parties by requiring orderliness and regularity in pleadings.” Thomas v. Bailey, 375 So.2d 1049, 1052 (Miss.1979) (emphasis added). As was discussed above, the supreme court stated that a party cannot have contrary positions “in the same litigation.” Dockins, 849 So.2d at 155 (¶ 7) (emphasis added). Cooley’s alienation-of-affection claim against Wood is not subject to judicial estoppel. Wood was not a party to the Jennifer and Cooley’s divorce proceedings, and the current case was not the same litigation as was in the divorce proceeding. Thus, judicial estoppel is inapplicable.
III. Discovery Violation
¶ 16. Wood next argues that this Court should dismiss Cooley’s case or, in the alternative, have Cooley pay Wood’s attorneys’ fees and court costs because Cooley failed to identify Michael Langley in the discovery process.[2] Pursuant to Mississippi Rule of Civil Procedure Rule 37, a trial court may impose sanctions against a party for failing to cooperate during the discovery process. More specifically, Rule 37(b)(2)(C) gives the trial court the option of “dismissing the action or proceeding or any part thereof’ if a party does not cooperate in the discovery process.
¶ 17. In the current case, Wood’s attorney propounded an interrogatory asking Cooley to “list each and every person who may have discoverable information” pertaining to Cooley’s allegations. Although aware of the identity of Langley, Cooley did not provide his name when he responded to the interrogatory, and Wood only learned of Langley at trial. At the close of the trial, Wood moved for a mistrial on the ground that Cooley’s failure to disclose Langley’s identity was prejudicial to his preparation for trial. The circuit judge overruled Wood’s motion stating:
The perception of the [circuit c]ourt is that clearly [Cooley] and his counsel, Mr. Shelton, saw as the object of their lawsuit Mr. Chuck Wood.
[[Image here]]
Mr. Cooley apparently did not consider ... Mr. Langley the actionable party nor the party at fault for the breakup of the marriage.
[[Image here]]
Based upon the fact that the separation between [Cooley and Jennifer] occurred in early March of 2006, the divorce was filed very shortly thereafter, and the parties did not resume the marital relationship with each other, [Jennifer] testified that she did not commence a relationship with [Langley] until subsequent to the breakup of the relationship between she and [Wood], ... and there being no, at this time evidence to the contrary, the [circuit c]ourt is going to and does overrule the motion for a mistrial.
¶ 18. In his brief, Wood asserts that he was prejudiced because he would have shown at trial that Langley was “a cause of the divorce and that [Langley] was a proximate cause of Cooley’s alleged damages for loss of affection and consortium.” Thus, Wood argues that this Court should not let Cooley benefit from failing to disclose Langley’s identity and should impose sanctions on Cooley by dismissing his case or requiring Cooley to pay Wood’s attorneys’ fees and court costs.
*928 ¶ 19. This Court recognizes that “the decision to impose sanctions for discovery abuse is vested in the trial court’s discretion.” Pierce v. Heritage Props., Inc., 688 So.2d 1385, 1388 (Miss. 1997) (citing White v. White, 509 So.2d 205, 207 (Miss.1987)). The standard of review that this Court adheres to when reviewing decisions within the discretion of the trial court is to first ask if the correct legal standard has been applied. Id. After a determination that the correct legal standard has been applied and that the decision was “one of several reasonable ones which could have been made[,][t]his Court will affirm a trial court’s decision unless there is a ‘definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of [the] relevant factors.’” Id. (quoting Cooper v. State Farm Fire & Cas. Co., 568 So.2d 687, 692 (Miss.1990)). As is apparent from the quoted language from the transcript, the circuit judge did not issue any discovery sanctions against Cooley or his attorney for failing to disclose Langley as a person who would have had discoverable information. In choosing not to issue any discovery sanctions and overruling Wood’s motion for a mistrial, the circuit judge relied on the facts that before Jennifer and Langley began their relationship, Jennifer and Wood’s affair had already started and ended and that Jennifer and Cooley had separated and filed for divorce. Based on the evidence presented, we do not find that the circuit judge committed a “clear error of judgment” by not issuing discovery sanctions for Cooley’s failure to identify Langley as a person with discoverable information.
¶ 20. This issue is without merit.
IV. Rule 19
¶ 21. Wood next argues that, pursuant to Mississippi Rule of Civil Procedure Rule 19, Langley was an indispensable party who was not joined; thus, Wood is entitled to a new trial. At trial, Wood’s attorney moved the circuit court to dismiss the case for failing to join Langley pursuant to Rule 19. The circuit judge overruled Wood’s motion on the ground that Jennifer testified that she and Langley did not begin their relationship until after the divorce was filed and after she and Wood had already ended their relationship. The circuit judge further stated that “[Cooley] has the right to proceed with his litigation against Mr. Wood.” At trial, a jury instruction was given to apportion fault to Langley, essentially an empty-chair instruction. Wood asserts that this instruction was not sufficient to protect his right to a complete defense.
¶ 22. Although neither party cited much, if any, relevant case law to support his respective position, and Wood’s application of Rule 19 and Mississippi Rule of Civil Procedure Rule 12 to this case is severely lacking, this Court will address the merit of Wood’s claim. The standard of review that this Court applies when reviewing the circuit court’s decision on joinder is whether the circuit judge abused his discretion. Dillard’s, Inc. v. Scott, 908 So.2d 93, 96 (¶ 10) (Miss.2005). Rule 19(a) requires a party to be joined in an action if:
(1) in his absence complete relief cannot be accorded among those already parties, or
(2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.
*929 If he has not been so joined, the court shall order that he be made a party,
¶ 23. Keeping in mind the standard of review of this issue, we find that the circuit judge did not err in not dismissing Cooley’s ease for the failure to join an indispensable party. “A claim of alienation of affection accrues when the alienation or loss of affection is finally accomplished.” Carr v. Carr, 784 So.2d 227, 230 (¶ 8) (Miss.Ct.App.2000) (citing Overstreet v. Merlos, 570 So.2d 1196, 1198 (Miss.1990)). The testimony at trial indicates that Jennifer and Langley did not begin their relationship until after she and Cooley separated and filed for divorce and after she and Wood had already ended their relationship. The tort of alienation of affection with respect to Jennifer, Wood, and Cooley was complete several months before Langley and Jennifer began their relationship. Langley’s absence from the proceeding does not invoke concerns about Rule 19 sufficient to find that the circuit judge abused his discretion in not dismissing the case. This issue is without merit.
V. Motion in Limine
¶ 24. Wood next argues that the circuit judge erred in granting Cooley’s motion in limine. After the entry of the final judgment of divorce, Jennifer and Cooley returned to chancery court, and the custody of the couple’s daughter was modified granting Cooley custody. At trial, Cooley moved the circuit court to exclude evidence regarding the custody modification because it was not relevant to what occurred during the marriage and prior to the divorce. Cooley relied on Fitch, 959 So.2d at 1022 (¶ 25), to argue that the “key time frame for the tort of alienation of affections is that of the marriage”[;] therefore, the evidence regarding custody modification in favor of Cooley subsequent to the divorce should be excluded. Disagreeing with this reasoning, Wood argued, at trial and in his appellate brief, that the evidence of the custody modification should not be excluded. He asserts that he should be able to mitigate his damages by showing that Cooley did not lose Jennifer’s ability to care for the child since she was not an adequate caregiver to begin with and that Cooley has been able to maintain a meaningful relationship with their daughter. He argues that, for these reasons, the motion in limine should have been denied. After hearing from both parties, the circuit judge granted Cooley’s motion in limine with the exception that the parties were allowed to ask the witnesses about where the daughter was currently residing.
¶ 25. The standard of review that this Court applies when reviewing the admission or exclusion of evidence is abuse of discretion. Davis v. Paepke, 3 So.3d 131, 138 (¶ 21) (Miss.Ct.App.2009) (quoting Univ. Of Miss. Med. Ctr. v. Pounders, 970 So.2d 141, 145 (¶ 13) (Miss.2007)). Viewing the evidence under this standard, we find that the circuit judge did not abuse his discretion in granting the motion in limine. The parties were permitted to ask where the current residence of the daughter was. This exception provided Wood with the opportunity to mitigate his damages by showing that Cooley still had a meaningful relationship with the child while preventing him from using the evidence of Jennifer’s behavior post-divorce to mitigate his damages for the harm he caused to the marriage prior to the divorce. This issue is without merit.
VI. Inappropriate Comments Made During Closing Arguments
¶ 26. Also concerning the motion in limine, Wood argues that Cooley’s attorney violated the motion in limine by making comments about custody during closing *930 arguments and that the court erred in not ordering a mistrial.[3] Cooley’s attorney stated in his closing argument that: “Mr. Cooley, in fact, is not this mean, violent person that they would have you believe that he is. All of the proof showed Mr. Cooley has custody of three of his children.” At the close of trial, Wood moved the circuit court to instruct the jury to disregard the statement Cooley’s attorney made during closing argument or, in the alternative, to grant a mistrial. The circuit judge overruled Wood’s motion because Wood “had the opportunity and did argue to a great extent about how violent and so forth [Cooley] was.” The circuit judge further found that Wood was not precluded from using any of the evidence regarding Cooley’s violent temperament; thus, there was no prejudice to Wood. We agree. Attorneys are given wide latitude when making their closing statements; as such, “any alleged improper comment must be viewed in context, taking the circumstances of the case into consideration.” Burr, 909 So.2d at 724-725 (¶ 7) (quoting Eckman v. Moore, 876 So.2d 975, 994 (¶ 73) (Miss.2004)). To explain further, an attorney’s comment during closing argument is viewed to determine “whether the natural and probable effect of the improper argument is to create unjust prejudice ... so as to result in a decision influenced by the prejudice so created.” Id. It has also been found that “[t]he trial judge is in the best position to determine if an alleged objectionable remark has a prejudicial effect.” Id.
¶ 27. After reviewing the statement, taken in the proper context, we cannot find that the circuit judge erred in allowing the comment. In context, the statement made by Cooley’s attorney went to refute Cooley’s violent temperament. We agree with the circuit judge that Wood’s attorney had ample opportunity of which the attorney took advantage, to show Cooley’s violent temperament. Thus, the statement made did not prejudice Wood. This issue is without merit.
VII. Jury Instructions
¶ 28. Wood next argues that jury instruction C-5 was vague, and the circuit court erred in submitting it to the jury. He also argues that the circuit court erred in submitting jury instructions C-7 and C-9 because, when read with jury instruction C — 10, they were confusing and misleading to the jury about the elements of alienation of affection.
¶ 29. The standard of review this Court applies when reviewing jury instructions is limited because the circuit court has considerable discretion in instructing the jury. Fitch, 959 So.2d at 1023 (¶ 29) (citing Southland Enter. v. Newton County, 838 So.2d 286, 289 (¶9) (Miss.2003)). Jury instructions must be read and consid ered together as a whole. Pierce v. Cook, 992 So.2d 612, 625 (¶ 41) (Miss.2008) (citing Richardson v. Norfolk S. Ry. Co., 923 So.2d 1002, 1010 (¶ 19) (Miss.2006)). No instruction should be read alone or taken out of context. Id. Jury instruction C-l, which was given at trial, instructed the jury of that exactly. It reads, in pertinent part, as follows: “You, as jurors, are not to single out one instruction alone as stating the law, but you must consider these instructions as a whole.”
¶ 30. Keeping this standard of review in mind, we begin with Wood’s assertion that jury instruction C-5 was vague and an *931 incorrect statement of law. Jury instruction C-5 states:
The Court instructs the jury that Plaintiff, JASON CHAD COOLEY, was entitled to be protected in his marital relationship without interference from the Defendant, CHUCK WOOD.
The interest protected is personal to the husband and arises out of the marriage relation, and includes the society, companionship, love, affection, aid, services, support, sexual relations and the comfort of his wife as special rights and duties growing out of the marriage covenant.
¶ 31. Wood asserts that this instruction addresses only the first element of alienation of affection; thus, the jury would be confused as to the elements that must be proved. He likens the instruction to one that would have been appropriate for the abolished tort of criminal conversation but fails to address all the elements of alienation of affection adequately. In fact, the sole authority Wood cites for this issue is Saunders v. Alford, 607 So.2d 1214 (Miss.1992), in which the supreme court abolished the tort of criminal conversation. Although Wood failed to cite any relevant authority on the issue of this jury instruction, we address the merits of this issue and find that this instruction was properly given. Read in context with the remaining jury instructions, it is clear that the jury was properly advised of the elements of alienation of affection. There are three elements that a plaintiff must prove, by a preponderance of the evidence, in a case for alienation of affection. These elements are: (1) the wrongful conduct of the defendant; (2) the loss of affection or consortium between the husband and wife; and (3) a causal connection between the wrongful conduct and the loss of affection or consortium. Fitch, 959 So.2d at 1025 (¶ 36)(citing Saunders, 607 So.2d at 1215 (Miss.1992)). Jury instructions C-9 and C-10, which were previously set out in full, both contain the elements of alienation of affection. Jury instruction C-5, when read with jury instructions C-9 and C-10, clearly instruct the jury on the proper elements that Cooley had to prove to be successful in his claim of alienation of affection.
¶ 32. We now turn to Wood’s argument that the circuit court should not have given instructions C-7 and C-9 to consider because C-10 properly instructed the jury as to what constitutes “wrongful conduct” under the first element of alienation of affection. For clarity in this analysis, we include all three instructions, in full.
¶ 33. Jury instruction C-7 reads:
In order for you to return a verdict in favor of Plaintiff!,] JASON CHAD COOLEY, it is not necessary for you to find that the wrongful actions of Defendant[,] CHUCK WOOD[,] were the sole cause of the alienation of affection between Jason Chad Cooley and his then-wife Jennifer Cooley. Rather, it is sufficient if you find that the wrongful actions of Defendant!,] CHUCK WOOD[,] caused or contributed to this alienation of affection.
(Emphasis added). Jury Instruction C-9 reads:
If you find from a preponderance of the evidence that:
(1) The conduct of Defendant!,] CHUCK WOOD[,] was wrongful in that he engaged in a sexual relationship with Jennifer Cooley at a time when she was married to Plaintiff[,] JASON CHAD COOLEY;
(2) That Plaintiff!,] JASON CHAD COOLEY[,] lost the affections of Jennifer Cooley, including loss of companionship, society, love and comfort, all of which are elements of the loss of consortium; and
*932 (3) That there was a causal connection between the affair between Defendant!,] CHUCK WOOD!,] and Jennifer Cooley and the loss of consortium suffered by Plaintiff!,] JASON CHAD COOLEY, even if Defendant!,] CHUCK WOOD!,] did not “initiate” the relationship with Jennifer Cooley,
then you must return a verdict in favor of Plaintiff!,] JASON CHAD COOLEY.
(Emphasis added).
¶ 34. Wood argues that the use of “wrongful conduct,” “wrongful actions,” “the affair,” and “sexual relationship” found in jury instructions C-7 and C-9 indicate that the first element of alienation of affection is satisfied by Wood’s admission of a sexual relationship with Jennifer and not that Wood’s “persuasion, enticement or inducement cause or contributed to !Cooley’s] loss of affection or consortium.” He further argues that the reference to “the affair” in jury instruction C-9 prevented the jury from properly considering the causal connection between Wood’s conduct and the divorce as required in element three of alienation of affection. Further, he submits that jury instruction C-10 properly instructed the jury as to the elements of alienation of affection; thus, jury instructions C-7 and C-9 only served to confuse and misinform the jury on the elements that must be proved.
¶ 35. Jury Instruction C-10 reads:
If you find from a preponderance of the evidence in this case that:
1.The Defendant, Chuck Wood, persuaded, enticed or induced Jennifer Cooley Sage (former spouse of the Plaintiff, Jason Chad Cooley) to abandon her marital relationship with the Plaintiff, Jason Chad Cooley, in favor of him;
2. The Defendant’s persuasion, enticement or inducement caused or contributed to the abandonment, even if the Defendant did not “initiate” the relationship with Jennifer Cooley; and
3. The Plaintiff, Jason Chad Cooley, suffered loss of affection or consortium as a direct and proximate result of the Defendant’s conduct. Consortium is the entitlement to society, companionship, love, affection, aid, services, support, sexual relations and the comfort of the spouse as special rights and duties growing out of the marriage covenant; to these may be added the right to live together in the same house, to eat at the same table, and to participate together in the activities, duties and responsibilities necessary to make a home.
then your verdict shall be for the Plaintiff.
However, if you believed that the Plaintiff has failed to show any one of these elements by a preponderance of the evidence in this case, then your verdict shall be for the Defendant.
¶ 36. Again, referring to jury instruction G — 1 that was given at trial, the circuit court instructed the jury to not just view one instruction to determine the applicable law but to view the instructions as a whole to determine the law. Jury instructions C-7 and C-9, given alone, might have been subject to confusion as to the elements of alienation of affection, but when viewed in light of the remaining instructions, particularly jury instruction C-10, this Court finds that the circuit court did not err in issuing those instructions. This issue is without merit.
VIII. Cumulative Error
¶ 37. Finally, Wood argues that this Court should grant him a new trial be *933 cause the cumulative effect of the errors raised, taken together, make up reversible error sufficient to warrant a new trial.
¶ 38. Because we have found no error in any of Wood’s issues, there can be no cumulative error. Figueroa v. Orleans, 42 So.3d 49, 53 (¶ 14) (Miss.Ct.App.2010). This issue lacks merit.
¶ 39. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, BARNES, ISHEE AND RUSSELL, JJ„ CONCUR.
CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. MAXWELL, J., NOT PARTICIPATING.

. Issues I — III are combined into Section I. Issue IV is Section II. Issues V-VI are combined into Section III. Issue VII is Section IV. issue VIII is Section V. Issue IX is Section VI. Issues X-XI are combined into Section VII. Issue XII is Section VIII.

. Langley and Jennifer began a dating relationship subsequent to Jennifer and Cooley filing for divorce and subsequent to Jennifer and Wood ending their affair.

. Although this issue is procedurally barred pursuant to Mississippi Rule of Appellate Procedure Rule 28(a)(6) because Wood fails to cite to any statute, case law, rule, or any other authority in support of his contention, this Court will address the issue on the merits.