IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI
NO. 2022-CA-00426-COA

CHRIS WEAVER                                                          APPELLANT

v.

TIM ROSS D/B/A ROSS'S RESTORATIONS                          APPELLEES
AND TIM ROSS, INDIVIDUALLY

| | |
|---|---|
| DATE OF JUDGMENT: | 03/31/2022 |
| TRIAL JUDGE: | HON. TOMIKA HARRIS IRVING |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | PHILIP CAREY HEARN |
| | CHARLES CASSIDY COLE |
| ATTORNEYS FOR APPELLEES: | JAMES D. SHANNON |
| | HEATHER LYNN HALL |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 03/19/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., McDONALD AND SMITH, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.     Chris Weaver sued Tim Ross and Tim Ross d/b/a Ross's Restoration (collectively, Ross) for negligence due to an alleged improper restoration of Weaver's 1969 Dodge Dart and negligent infliction of emotional distress due to the incident. In response, Ross filed a counterclaim against Weaver alleging tortious interference with business relations, defamation, and intentional infliction of emotional distress.

¶2.     After a trial in the Copiah County Circuit Court, the jury found Ross was not negligent, and Ross had suffered emotional distress that Weaver intentionally inflicted. The jury awarded Ross damages in the form of "legal fees/court cost." Weaver now appeals.

Different counsel representing him on appeal than at trial, Weaver raises four issues, three of which pertain to evidentiary matters. Weaver claims that the circuit court erred in denying the admission of his medical records indicating high blood pressure since the incident and in denying the admission of an invoice from a different restoration company to show comparative quality and cost. Additionally, Weaver argues that the judgment for Ross on intentional infliction of emotional distress was against the sufficiency and weight of the evidence and that the trial court's award of attorney's fees for damages on the claim was unreasonable. Finding no error, we affirm the judgment in favor of Ross and the award of attorney's fees in the amount of $58,095.66.

## STATEMENT OF FACTS

¶3. In September 2012, Weaver hired Ross to perform restoration work on his "dream car," a 1969 Dodge Dart. Ross owned and operated Ross's Restorations, which was located in Crystal Springs, Mississippi. The business serviced, painted, and restored classic automobiles. At the time, Weaver lived near Dallas, Texas. Ross's restoration work came highly recommended to Weaver by word of mouth. About one year later, Ross completed the restoration. Ross had provided regular invoices for the services performed, and Weaver had timely paid them. The work done on Weaver's vehicle included certain repairs, paint, and bodywork. When picking up his vehicle at Ross's shop, Weaver inspected it and was satisfied with Ross's work. Against Ross's advice, Weaver transported the vehicle back to Texas on a trailer with inadequate suspension. Weaver paid Ross a total of $20,617.07 for the restoration work on his vehicle.

2

¶4.    Once home, Weaver became dissatisfied with the work on the Dodge Dart, claiming it was not properly repaired or painted to "show quality"[1] and was damaged.  Weaver contended that he attempted to resolve his dissatisfaction with Ross, but their communications broke down.  Weaver consulted several other individuals who specialized in restorations.  He testified that they informed him the restoration was improper and would need to be redone.  Aggrieved by this information, Weaver initiated the present lawsuit.

¶5.    Ross maintained that he did not damage the vehicle, and the restoration was "immaculate and pristine."  Ross attributed any damage to the vehicle to the improper manner in which Weaver transported it back to Texas.  Ross stated that Weaver began publishing defamatory statements on Internet forums that specifically discussed the restoration of classic automobiles, which Ross contended caused him loss of prospective customers, damage to his business, and emotional distress.

¶6.    In February 2015, Weaver sued Ross for negligent work on his vehicle, seeking compensatory damages.  Weaver also claimed negligent infliction of emotional distress—that as a result of this incident, he had to be put on blood pressure medicine, and his stress level was elevated.  In June 2015, Ross filed an answer and counterclaim against Weaver, alleging tortious interference with business relations, defamation, and intentional infliction of emotional distress.  With respect to the latter claim, Ross asserted that due to Weaver's unfounded accusations and lawsuit, Ross had stress, anxiety, headaches, elevated blood pressure, and a diagnosis of situational stress reaction.

---

[1]  There was conflicting testimony from the parties and witnesses about whether Weaver told Ross he desired a "show quality" restoration or something less.

¶7. In November 2021, after discovery and several continuances, the trial occurred. Right before trial, the circuit court heard Ross's motion in limine to preclude Weaver from testifying about his increased blood pressure. The trial court denied the motion, finding that while Weaver had not been designated as an expert, "a lay witness can testify whether his health has been affected by an alleged negligence." However, the trial court stated that "[t]he jury will determine what weight and credibility to give if such testimony is given without proof (i.e. certified medical records, expert testimony)." The trial judge ruled from the bench that while Weaver could testify about his blood pressure, the medical records would not be admitted due to authentication issues.

¶8. During trial, the court considered whether an invoice from a different company that restored a different vehicle should be admitted into evidence to show a comparison between the jobs' cost and quality. The owner of the company, John Mosley, testified as an expert witness for Weaver in the field of restoration and collision repair. Mosley was a longtime owner of a collision repair shop that provided some restoration work. Weaver's counsel attempted to enter an invoice for $53,000 from Mosley's business on a truck restoration, claiming it was a "similar job." The invoice had been an exhibit to Mosley's deposition. The trial court excluded the invoice but allowed testimony on it.

¶9. Ross had several witnesses testify about the quality of his restorations, the propriety of his billing, and the negative emotional impact of the lawsuit on him. J. W. Hames, who also owned a restoration business, met Weaver several times at Ross's shop and talked to him on the telephone about the quality of Ross's restoration of Weaver's vehicle. At the

4

time, Hames had hired Ross to do the paint and bodywork on his own Dodge Dart for national shows. Hames had been impressed by Ross's restoration work. Additionally, Hames testified that on an Internet forum page for vehicle restoration, there had been a chat between Weaver and others, where Weaver was "smashing Mr. Ross about his work" and its cost. In these chats, Weaver called Ross a "crook" who did "shotty work." Weaver also accused Hames on the chat forum of taking a "kickback" from Ross—a claim Hames denied.

¶10. Additionally, Jennifer Sojourner testified as an expert witness for Ross in her field as a family nurse practitioner with a specialty in stress reaction disorders. Sojourner first began treating Ross routinely in August 2012. She testified in detail about treating Ross's complaints regarding stress from the instant lawsuit starting in May 2015 through the trial. Initially, Ross had symptoms of anxiety that were impacting his sleep. She diagnosed him with situational stress reaction and prescribed him a medication regimen. For the stress, she prescribed him Xanax, three times a day, which he continued to take through trial. Sojourner also testified about other life stressors that Ross was experiencing, such as being the caregiver for his mother-in-law, wife, and two young grandsons, as well as the stress of owning his own business.

¶11. The jury found that Ross was not negligent and that he suffered damages due to Weaver's intentional infliction of emotional distress, awarding Ross "legal fees/court cost."[2] Weaver filed a motion for judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which the trial court denied. Ross filed a motion to determine

---

[2] At the close of Ross's case-in-chief, he abandoned his claims of tortious interference with business relations and defamation.

5

attorney's fees, which was granted. The trial court determined that Weaver should pay Ross $58,095.66 for attorney's fees as damages.

## ANALYSIS

### I. Admission of Evidence

¶12. Weaver claims the trial court erred in denying the admission of medical records on his blood pressure and an invoice on an allegedly comparative restoration. We shall discuss each issue in turn.

¶13. This Court reviews the trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. *Miss. Baptist Health Sys. Inc. v. Kelly*, 88 So. 3d 769, 777-78 (¶27) (Miss. Ct. App. 2011) (citing *Whitten v. Cox*, 799 So. 2d 1, 13 (¶27) (Miss. 2000)). "Where error involves the admission or exclusion of evidence, [the appellate court] 'will not reverse unless the error adversely affects a substantial right of a party.'" *Wells v. Tucker*, 997 So. 2d 908, 918 (¶33) (Miss. 2008) (quoting *Whitten*, 799 So. 2d at 13 (¶27)).

#### A. Weaver's Medical Records

¶14. Months before trial, in July 2021, Ross moved to exclude Weaver's testimony about his blood-pressure issues allegedly caused by Ross's failure to restore his vehicle. Several days later, Weaver filed a response, arguing that as a lay witness, Weaver "should be able to testify as to his own medical condition and records." On November 17, 2021, a pretrial hearing was held on Ross's motion in limine. At that time, Ross's counsel also argued for the exclusion of Weaver's medical records regarding his blood pressure. Ross's counsel noted that no authenticated records had been provided, and no physician testimony had been

6

given about a causal relationship between the restoration and the high blood pressure. Counsel for Weaver countered that Weaver himself obtained the medical records from the physician's office, and, thus, they should be admissible. The trial court disagreed, ruling the medical records were inadmissible because they lacked a certificate of authentication or an affidavit from a custodian of records. In an order entered the same day, the trial court denied Ross's motion and ruled that Weaver could testify about his own health.

¶15.    Weaver now argues that the trial court's late ruling on the first day of trial prejudiced him by preventing him from authenticating his medical records. Weaver complains that the trial court had "previously ruled" on Ross's motion to exclude Weaver's testimony in its order dated November 17, 2021. He claims the order indicated the medical records would be allowed into evidence, pointing to this sentence, "The jury will determine what weight and credibility to give if such testimony is given without proof (i.e. certified medical records, expert testimony)." (Emphasis added). Weaver claims he was prejudiced at the start of trial when the trial court ruled on the necessity of authenticating the medical records, "thus denying him both the ability to admit the records and the opportunity to obtain the certification."

¶16.    However, Weaver's argument about the timing of the trial court's rulings is amiss. The order allowing Weaver's testimony was entered on the same day as the pretrial evidentiary hearing and the denial of the motion regarding medical records: November 17, 2021—the first day of trial. There was no "previous" ruling on the testimony—it all occurred on the same day. Further, we do not read the order to anticipate that Weaver's

7

medical records would be admitted. This argument is without merit.

¶17. Additionally, Ross's motion in limine and Weaver's response were made in July 2021, months before trial. In that time, Weaver could have requested that the physician's office include a certification of authenticity with the medical records when he obtained them, knowing they would be used at trial. Further, there was no waiver of the authentication requirement, such as by a pre-trial order. Moreover, Weaver was not prejudiced by their exclusion because Ross was not found negligent for his restoration job. Further, Weaver was allowed to testify at length about his medical condition and the information in the medical records. Thus, the trial court did not abuse its discretion in denying the admission of Weaver's unauthenticated medical records.

### B.    *Invoice*

¶18. At trial, Weaver sought to admit an invoice during the testimony of his expert Mosley; the invoice was an exhibit to Mosley's deposition. In 2018, Mosley had examined Weaver's vehicle and Ross's invoices for his work. Mosley's opinion of Ross's restoration was that "when you look at it, it's not a bad job. . . . [T]he car looks nice and everything, . . . but if it's supposed to be a restoration, it falls short." Mosley went on to testify about restorations he had performed in the past, the work entailed, and their cost. He also testified that the last restoration he did was on a Ford truck, at which point Weaver's counsel attempted to enter the invoice for the job, totaling $53,000, into evidence. Counsel claimed it was a similar job to Ross's restoration but admitted to the trial court that not all the work done to the truck was done to Weaver's vehicle. The trial court sustained defense counsel's

8

objection to the invoice's admission.

¶19.    Weaver now argues the trial court erred in excluding the invoice, the purpose of which was to show the jury an example of another restoration job's work and cost. However, the invoice did not mention or involve a Dodge Dart but a Ford truck, and the work done was not necessarily comparable.  If admitted, the invoice had the potential to confuse the jury.  The trial court allowed Mosley to testify at length about various restorations and costs compared to Ross's restoration.  Therefore, the trial court did not abuse its discretion in denying the invoice's admission.  Weaver was not prejudiced by its exclusion.

## II.    Sufficiency and Weight of the Evidence

¶20.    Weaver argues the judgment in favor of Ross's counterclaim for intentional infliction of emotional distress was against the weight of the evidence.[3]  Therefore, he claims the trial court erred in denying his motion for a JNOV or, alternatively, a new trial.

¶21.    A motion for JNOV challenges the legal sufficiency of the evidence, and its grant or denial is reviewed de novo.  *Wilty v. Alpha*, 99 So. 3d 830, 833-34 (¶18) (Miss. Ct. App. 2012) (quoting *InTown Lessee Assocs. v. Howard*, 67 So. 3d 711, 718 (¶22) (Miss. 2011)). The appellate court "will affirm the denial of a JNOV motion if there is substantial evidence to support the verdict."  *Id.*  Substantial evidence is "evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions."  *Condere Corp. v. Moon*, 880 So. 2d 1038, 1042 (¶12) (Miss. 2004)

---

[3]  On appeal, Weaver only argues against the weight of the evidence, and Ross only responds about the sufficiency of the evidence; therefore, we shall discuss both.

9

(quoting *Strong v. Nicholson*, 580 So. 2d 1288, 1292 (Miss. 1991)). The evidence will be considered "in the light most favorable to the appellee, giving the party the benefit of all favorable inferences that may be reasonably drawn from the evidence." *InTown Lessee*, 67 So. 3d at 718 (¶22) (quoting *Spotlite Skating Rink Inc. v. Barnes ex rel. Barnes*, 988 So. 2d 364, 368 (¶10) (Miss. 2008)).

¶22. Alternatively, we review a ruling on a motion for a new trial challenging the weight of the evidence for abuse of discretion. *Johnson v. St. Dominics-Jackson Mem'l Hosp.*, 967 So. 2d 20, 23 (¶8) (Miss. 2007). Credible evidence will be "viewed in the light most favorable to the non-moving party." *Trustmark Nat'l Bank v. Jeff Anderson Reg'l Med. Ctr.*, 792 So. 2d 267, 274 (¶18) (Miss. Ct. App. 2000). "The jury is the ultimate judge of the weight of the evidence and the credibility of the witnesses." *Id.* A jury verdict "will not be set aside unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id.*

¶23. To succeed on a claim for intentional infliction of emotional distress, the plaintiff must show:

> (1) the defendant acted willfully or wantonly toward the plaintiff by committing certain described actions; (2) the defendant's acts are ones that evoke outrage or revulsion in civilized society; (3) the acts were directed at, or intended to cause harm to, the plaintiff; (4) the plaintiff suffered severe emotional distress as a direct result of the acts of the defendant; and (5) such resulting emotional distress was foreseeable from the intentional acts of the defendant.

*Jones v. City of Hattiesburg*, 228 So. 3d 816, 819 (¶8) (Miss. Ct. App. 2017) (citing *Rainer v. Wal-Mart Assocs. Inc.*, 119 So. 3d 398, 403-04 (¶19) (Miss. Ct. App. 2013)). "The

standard for intentional infliction of emotional distress "is whether the defendant's behavior is malicious, intentional, willful, wanton, grossly careless, indifferent, or reckless." *Id.* (citing *Little v. Collier*, 759 So. 2d 454, 457 (¶13) (Miss. Ct. App. 2000)).

¶24. Weaver argues that the evidence showed Ross had multiple contributing causes of stress, not just the lawsuit, which caused his stress diagnosis and high blood pressure. Ross's nurse practitioner Sojourner testified that Ross had trouble sleeping as early as August 2012 and suffered stress from owning his own business as well as his numerous caregiving responsibilities.

¶25. Examined in the light most favorable to Ross, there was substantial evidence of intentional infliction of emotional distress by Weaver. Sojourner testified in detail that Ross's diagnosis of situational stress disorder was due to the lawsuit even though he was experiencing other stressors as well. She testified at length as to when she saw Ross, what she treated him for, and how, over the nine years of her treatment. Further, Hames testified about viewing numerous negative comments about Ross's work that Weaver had posted on an Internet chat forum that Ross testified caused him "tremendous stress." There was substantial evidence to support Ross's claim for intentional infliction of emotional distress. Further, the trial court did not abuse its discretion in denying Weaver's motion for a new trial. The jury found the weight of the evidence and credibility of the witnesses supported Ross's claim. The jury verdict was not "so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Trustmark*, 792 So. 2d at 275 (¶18).

11

### III.   Attorney's Fees

¶26.   Weaver argues the trial court's grant of attorney's fees as damages for Ross's intentional infliction of emotional distress claim was unreasonable and unsupported under Mississippi law.

¶27.   It is well established that the assessment of attorney's fees must be reasonable. *BellSouth Pers. Commc'ns LLC v. Bd. of Sup'rs of Hinds Cnty.*, 912 So. 2d 436, 445 (¶30) (Miss. 2005).   In Mississippi, the reasonableness of attorney's fees is governed by Rule 1.5(a) of the Mississippi Rules of Professional Conduct, otherwise known as the *McKee* factors.[4] *Id.* at 445-46 (¶31) (citing *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982)). This Court reviews the trial court's decision on whether to award attorney's fees and the amount for an abuse of discretion. *City of Gulfport v. Cowan Rd. & Hwy 90 LLC*, 352 So. 3d 592, 598 (¶18) (Miss. 2022) (citing *Miss. Power & Light Co. v. Cook*, 832 So. 2d 474, 478 (¶7) (Miss. 2002)). "The fixing of reasonable attorneys' fees is a matter ordinarily

---

[4] The factors to be considered by the trial court in determining the reasonableness of a fee are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

*BellSouth*, 912 So. 2d 436, 445-46 (¶31) (citing Miss. R. of Prof. Conduct 1.5(a)).

within the sound discretion of the trial court." *Id.* (quoting *Gilchrist Tractor Co. v. Stribling*, 192 So. 2d 409, 418 (Miss. 1996)). The "trial court's decision regarding attorneys' fees will not be disturbed by an appellate court unless it is manifestly wrong." *Id.* (quoting *Tupelo Redevelopment Agency v. Gray Corp.*, 972 So. 2d 495, 521 (¶81) (Miss 2007)).

¶28. Here, the jury found Ross should be awarded attorney's fees as damages for Weaver's intentional infliction of emotional distress claim. Ross filed a motion to determine attorney's fees, attaching a detailed, itemized billing for legal fees and expenses for the entire case from May 2015 through November 2021, totaling $80,081.23. The trial court held a hearing on the motion; however, Weaver did not include its transcript in the appellate record. The trial court's order on the fees stated that at the hearing, the defense counsel's billing records manager testified. The trial court reduced Ross's attorney's fees to $58,095.66.

¶29. Weaver now complains that the trial court did not engage in a Rule 1.5 analysis regarding attorney's fees. He argues that the trial court must provide a detailed order considering the factors in Rule 1.5.[5] Further, he contends that the award was not supported

---

[5] Weaver cites *Obert Law Group P.A. v. Holt*, 328 So. 3d 622 (Miss. 2021), for the proposition that the trial court must provide a detailed order analyzing the reasonableness of attorney's fees. In *Obert Law Group*, the supreme court affirmed the chancellor's finding that attorney's fees collected in the administration of an estate were unreasonable. *Id.* at 626 (¶8). The chancellor entered a detailed order considering the factors of Rule 1.5, finding unreasonable billing entries for clerical work and the legal work performed. *Id.* at 626-27 (¶¶8, 14). Weaver inaccurately contends that under *Obert Law Group*, the trial court "should provide 'a detailed order' that considers these factors" and "set forth the basis for the award including things such as findings related to specific time entries," as well as whether "the results obtained were minimal given the amount of money charged" for representation. *Id.* at 626-27 (¶¶8, 14-15). Weaver, however, takes these statements out of context. The supreme court in *Obert* did not set these matters as requirements but, instead,

by substantial, credible evidence, as required by *BellSouth*. We disagree.

¶30. The trial court's order, while lacking specific findings as to the Rule 1.5 factors, states that the court considered the motion, which included a detailed billing attachment spanning over six years of legal services, as well as testimony from the billing records manager of Weaver's counsel. We find the award was supported by substantial, credible evidence. Moreover, the trial court did not merely accept the $80,081.23 in fees submitted by Ross's counsel but reduced it by over $20,000. Accordingly, the trial court did not abuse its discretion in awarding $58,095.66 in attorney's fees to Ross.

**CONCLUSION**

¶31. The trial court did not abuse its discretion in excluding Weaver's unauthenticated medical records of his blood pressure or the invoice for a restoration by a different restoration company on a different vehicle. Substantial evidence supports the jury's verdict in favor of Ross on intentional infliction of emotional distress, and the trial court's award of attorney's fees after a motion and hearing was reasonable and supported under Mississippi law.

¶32. **AFFIRMED.**

**CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD AND SMITH, JJ., CONCUR. McCARTY, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND SMITH, JJ. LAWRENCE AND EMFINGER, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITH SEPARATE WRITTEN OPINION, JOINED BY LAWRENCE, McCARTY AND EMFINGER, JJ.; GREENLEE, WESTBROOKS, McDONALD AND SMITH, JJ., JOIN IN PART.**

discussed them as facts and findings specific to that case.

14

**McCARTY, J., SPECIALLY CONCURRING:**

¶33. I agree with the majority that the jury's verdict in this case should be affirmed. It is important to emphasize that the verdict for the car restorer's counterclaim for intentional infliction of emotional distress and resulting attorney's fees do not run afoul of longstanding precedent. Our law does not allow recovery for emotional distress damages that result solely from the litigation process.

¶34. Several decades ago, our Supreme Court observed that "common experience has long ago taught that, under the best of circumstances, a citizen's encounter with the legal process is a source of great anxiety." *Singleton v. Stegall*, 580 So. 2d 1242, 1247 (Miss. 1991). "The average litigant experiences substantial emotional distress from the rigors of an action, with all of its traumatic impact." *Id*. (internal quotation omitted). "This trauma is felt by parties enjoying the best of legal counsel." *Id*.

¶35. Accordingly, in terms of the legal malpractice action before it, the Supreme Court held that the plaintiff "must show that [his lawyer's] defaults have proximately caused him substantial emotional distress that may be differentiated from that attendant upon his legal plight." *Id*.

¶36. In other words, a person was barred from recovering emotional distress damages simply for the stress of the legal process, but the person could recover for the underlying actions, omissions, or breaches that led to instituting legal suit. We followed this precedent some years later in finding that emotional distress damages were available in a legal malpractice suit—"only for emotional distress fairly separable from that proximately flowing

15

from his encounter with the legal process." *Lancaster v. Stevens*, 961 So. 2d 768, 773 (¶18) (Miss. Ct. App. 2007).

¶37.    This is in accord with the general rule in state and federal courts that a person may not recover damages simply because of "litigation-induced stress." *Picogna v. Bd. of Educ. of Twp. of Cherry Hill*, 671 A.2d 1035, 1038 (N.J. 1996) (explaining how state "courts are virtually unanimous in holding that litigation-induced stress is not recoverable as a separate component of damages" and that "federal court decisions are unanimous in holding that litigation-induced stress may not be recovered as damages"); *Zimmerman v. Direct Fed. Credit Union*, 262 F.3d 70, 79 (1st Cir. 2001) (stating "the heavy weight of authority holds that litigation-induced stress is not ordinarily recoverable as an element of damages").

¶38.    There is a sensible reason why: if litigation-induced stress were recoverable as damages, it would be nearly impossible to pursue or defend any lawsuit due to the threat of a damages award merely from the presence of the suit itself.  As Judge Posner reasoned many moons ago, "[i]t would be strange if stress induced by litigation could be attributed in law to the tortfeasor" since "[a]n alleged tortfeasor should have the right to defend himself in court without thereby multiplying his damages." *Stoleson v. United States*, 708 F.2d 1217, 1223 (7th Cir. 1983).[6]

---

[6] We also have procedural safeguards in place to curtail the improper use of litigation which do allow the payment of fees.  *See* MRCP 11(b) ("If any party files a motion or pleading which, in the opinion of the court, is frivolous or is filed for the purpose of harassment or delay, the court may order such a party, or his attorney, or both, to pay to the opposing party or parties the reasonable expenses incurred by such other parties and by their attorneys, including reasonable attorneys' fees"); Miss. Code Ann. § 11-55-5(1) (Rev. 2019) (providing that costs and fees may be awarded if "an attorney or party brought an action, or asserted any claim or defense, that is without substantial justification, or that the action, or

¶39.  Ross, the restorer of the Dodge, included a counterclaim with three counts in his answer.  He alleged in that pleading and during trial that he brought the '69 Dart up to "immaculate and pristine" condition and that Weaver was happy with it.  But Weaver then soured and began to blame Ross publicly and privately for what he contended was substandard work, including "divert[ing] prospective customers away from Ross and his business[.]"  So Ross counter-claimed for tortious interference with business relations, defamation, and the intentional infliction of emotional distress.

¶40.  Crucially, the claim for emotional distress was predicated solely on Weaver's intentionally causing him harm *before the lawsuit*, including publishing what Ross contended were false statements.

¶41.  While at trial some of the testimony wandered into the realm of post-suit litigation stress, there was ample proof in the record that the claim was based on Weaver's extreme actions prior to filing.  Any consumer, especially one who commissions custom work, can be disappointed by a purchased product.  But Weaver didn't express mere disappointment but instead a vicious and unfounded view that he had been intentionally cheated.  It wasn't just that he alleged in one popular online forum that Ross had done shoddy work—it was that he believed Ross was "a crook" and had even given a kickback to another restoration professional to obtain the Dart job.  Critically, the jury heard from this other restorer that Ross "does real good work for a fair price."

¶42.  Given this record, it's clear the proof and verdict in this case didn't conflict with our

any claim or defense asserted, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceedings by other improper conduct").

17

prohibition on damages for litigation-induced stress, and this prohibition was not specifically raised in the pleadings, in the trial below, or on appeal. I write specially only because it intersects with this rarely explored body of law that safeguards access to our court system.

**GREENLEE, WESTBROOKS, McDONALD, LAWRENCE AND SMITH, JJ., JOIN THIS OPINION.**

**WILSON, P.J., CONCURRING IN PART AND IN RESULT:**

¶43. I concur with Parts I and II of the majority opinion and concur that the judgment of the circuit court should be affirmed. I write separately to address two issues. First, although the jury's award of "legal fees/court cost" as damages was improper, Weaver waived any objection to the improper verdict. In future cases, the trial judge should instruct the jury to continue deliberations and return a verdict in proper form. Second, Weaver's challenge to the trial judge's order granting Ross's motion to determine attorney's fees is procedurally barred because Weaver failed to ensure that the transcript of the hearing on the motion was included in the record on appeal.

¶44. During the jury instruction conference, the parties agreed on the form of the verdict, which the jury completed and returned as follows:

18

JURY INSTRUCTION NO. 23

1. Was Ross's Restorations/ Tim Ross negligent?
YES _____ NO __✓__ If your answer to question 1 is YES, then answer question 2. If you answered NO, stop here and tell the bailiff.

2. Did Chris Weaver suffer damages as a result of Ross's Restorations/ Tim Ross's negligence?

YES _____ NO _____ If your answer to question 2 is YES, then answer question 3. If you answered NO.

3. Was Ross's Restorations/ Tim Ross's negligence a substantial factor in causing Chris Weaver's damages? YES _____ NO _____

if your answer to question 3 is YES, then answer question 4. If you answered NO, stop here and tell the bailiff.

4. What are Chris Weaver]'s damages? $_____ TOTAL as to Tim Ross or Ross Restoration?

Or IF YOU FIND

1. CHRIS WEAVER intentionally inflicted emotional distress towards Tim Ross.

YES __✓__ NO _____ If your answer to question 1 is YES, then answer question 2. If you answered NO, stop here and tell the bailiff.

2. Did Tim Ross suffer damages as a result of Chris Weaver's intentional infliction of emotional distress?

YES __✓__ NO _____ If your answer to question 2 is YES, then answer question 3. If you answered NO.

3. What are Tim Ross's damages? $ _legal_ TOTAL
fees/court cost

¶45.    The jury's award of "legal fees/court cost" as damages was improper.  "Mississippi follows the American rule regarding attorney fees: unless a statute or contract provides for imposition of attorney fees, they are not recoverable.  When there is no contractual provision or statutory authority providing for attorney fees, they may not be awarded as damages

19

unless punitive damages are also proper." *Century 21 Deep S. Props. Ltd. v. Corson*, 612 So. 2d 359, 375 (Miss. 1992) (citation omitted). Here, attorney's fees are not authorized by contract or statute, and neither the trial judge nor the jury determined that punitive damages were proper.[7] Moreover, even in cases in which punitive damages and attorney's fees may be proper, the jury does not award attorney's fees as compensatory damages. Rather, "there must be an award of compensatory damages *before* punitive damages and attorney's fees may be awarded." *Purvis v. Barnes*, 791 So. 2d 199, 203 (¶12) (Miss. 2001) (emphasis added). Finally, "attorney's fees are *not* an issue to be decided by the jury. Whether to award and the amount of attorney's fees are matters committed to the sound discretion of the trial judge." *Mitchell v. Broadway Transfer & Storage Co.*, 749 So. 2d 289, 290 (¶9) (Miss. Ct. App. 1999) (emphasis added). For all these reasons, the jury should have been instructed to continue deliberations and quantify Ross's damages, if any, for his mental and emotional

---

[7] Ross's counter-complaint did not include a demand for punitive damages, and Ross did not submit any proposed jury instructions regarding any claim by him for punitive damages. After the jury returned its verdict, counsel for Ross approached the bench and expressly waived any claim for punitive damages.

20

distress, not his attorney's fees and court costs.[8, 9]

¶46.    However, neither party objected to the form of the verdict before or after the jury was discharged.  Indeed, Weaver has *never* argued that the jury's award of "legal fees/court cost" was legally improper or that the trial judge lacked authority to determine attorney's fees.[10] Rather, Weaver argues that the jury's verdict on Ross's counterclaim "was against the weight of the evidence" and that the trial judge's award of attorney's fees was "unreasonable and unsupported under Mississippi law."  Accordingly, Weaver has waived any challenge to the form of the verdict.  *See, e.g.*, *Mack Trucks Inc. v. Tackett*, 841 So. 2d 1107, 1117 (¶31) (Miss. 2003) ("It is well established that an appellant must brief an issue for it to be reviewed on appeal.").  I concur that the judgment *in this case* should be affirmed for that reason.  But in future cases where a jury returns such a verdict, the trial judge must instruct

---

[8]   *Adams v. Green*, 474 So. 2d 577, 581 (Miss. 1985) (Even absent a request by a party, "the Supreme Court has placed the responsibility and duty squarely on the shoulders of the trial judge to, on [his or her] own motion, order the jury to return to the jury room to reform and reword their verdict and to bring in a verdict in proper form."); *Wood v. Cooley*, 78 So. 3d 920, 925-26 (¶11) (Miss. Ct. App. 2011) (holding that the trial judge properly instructed the jury to continue its deliberations after the jury returned a verdict awarding "attorneys' fees and court costs" rather than quantifying the plaintiff's damages); *see also* UCRCCC 3.10 ("If a verdict is so defective that the court cannot determine from it the intent of the jury, the court shall, with proper instructions, direct the jurors to reconsider the verdict.").

[9]   The jury's error in this case is understandable.  The jury was not given *any* instructions on Ross's counterclaim for intentional infliction of emotional distress or how to determine Ross's damages.  The jury was instructed if they found for Weaver, Weaver's "reasonable compensation, if any, [did] not include attorney's fees."

[10]   Weaver's response to Ross's motion to determine attorney's fees argued only that the amount of attorney's fees requested was "unreasonable" and should "be reviewed by the [trial court] . . . and set . . . at a reasonable amount."

21

the jury to continue deliberations and return a verdict in proper form.

¶47. In addition, Weaver's challenge to the trial judge's award of attorney's fees is procedurally barred because the record is insufficient for this Court to address it. The trial judge held a hearing and considered testimony on Ross's motion for attorney's fees, but Weaver failed to see that a transcript of the hearing was included in the record. Weaver initially designated "[t]he transcripts of any hearings or witness testimony" to be included in the record on appeal, but the record compiled by the circuit clerk and transmitted to this Court does not contain a transcript of the hearing on Ross's motion to determine attorney's fees. "As the appellant seeking a reversal of the trial court's order, it was [Weaver's] duty to see to it that the record contained all data essential to an understanding and presentation of matters relied upon for reversal on appeal." *Pratt v. Sessums*, 989 So. 2d 308, 310 (¶6) (Miss. 2008). Specifically, Weaver had a duty under Mississippi Rule of Appellate Procedure 10(b)(5) to review the record compiled by the circuit clerk and identify any necessary corrections. *Id.* at (¶8). Because Weaver failed to do so and failed to see that a transcript of the relevant hearing was included in the record on appeal, I would hold that Weaver's argument is procedurally barred without addressing it on the merits.

**LAWRENCE, McCARTY AND EMFINGER, JJ., JOIN THIS OPINION. GREENLEE, WESTBROOKS, McDONALD AND SMITH, JJ., JOIN THIS OPINION IN PART.**